IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES P. SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-04571 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| MIDWEST OPERATING ENGINEERS | ) | |
| PENSION FUND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Until suffering an on-the-job injury in 2000, Plaintiff James P. Smith, Jr. worked as an operating engineer and participated in the Midwest Operating Engineers Pension Fund, a multiemployer retirement benefit plan administered by the Board of Trustees of the Midwest Operating Engineers Pension Fund (collectively, "Fund"). As a result of his injury, the Fund deemed Smith eligible to receive disability benefits through the Fund's All Work Total Disability Pension ("Plan"). Smith received monthly disability benefits from November 2001 through September 2019, when the Fund informed Smith that it was terminating his benefits because he was no longer receiving disability benefits from the Social Security Administration ("Social Security Disability Award"). Smith subsequently brought the present action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that the Fund wrongfully terminated his disability benefits. The Fund has now filed a motion for summary judgment, claiming that its decision to terminate Smith's disability benefits was based on a reasonable interpretation of the Plan. (Dkt. No. 16.) Smith disagrees and has filed his own cross-motion for summary judgment. (Dkt. No. 22.) For the reasons that follow, Smith's motion is granted and the Fund's motion is denied.

## BACKGROUND

The following facts are undisputed.[1]

Smith was formerly employed as an operating engineer at Harry W. Kuhn, Inc. (Defs.' Statement of Facts in Supp. of Mot. for Summ. J. ("DSF") ¶ 7, Dkt. No. 18.) Pursuant to the collective bargaining agreement between Harry W. Kuhn, Inc. and the International Union of Operating Engineers Local 150, Smith was a participant in the Fund, a multiemployer retirement benefit plan as defined by 29 U.S.C. § 1002(37). (*Id.* ¶¶ 4–5, 7–8.)

Smith became unable to continue his work at Harry W. Kuhn, Inc. or perform any other occupation after suffering a work-related injury on September 25, 2000. (*Id.* ¶ 22.) On February 6, 2002, the Fund approved Smith's application for disability benefits, effective November 1, 2001. (*Id.* ¶ 9.) Specifically, the Fund determined that Smith was eligible to receive disability benefits under the Plan[2] because he suffered from a "Total and Permanent Disability," which the operative Plan document defined, in relevant part, as:

> A physical or mental condition of a Participant which the [Fund] find[s] on the basis of medical evidence to totally and permanently prevent such Participant from

---

[1] The Court notes that Smith failed to comply with several provisions of the Northern District of Illinois's Local Rule 56.1, which governs motions for summary judgment. In particular, Smith did not file a separate response to the Fund's statement of material facts in support of its motion for summary judgment as required by Local Rule 56.1(b)(2). Instead, Smith identifies in his response brief those facts he disputes and states that he does not dispute the remainder of the Fund's facts. Moreover, Smith cites directly to the record in his briefs in support of his motion for summary judgment and his response brief in opposition to the Fund's motion for summary judgment, rather than citing specific paragraphs in either his or the Fund's statements of facts as required by Local Rule 56.1(g). Nonetheless, Smith's non-compliance with Local Rule 56.1 does not excessively complicate the Court's task in evaluating the parties' motions because the Court does not discern any material factual disputes. Thus, Smith's non-compliance is excused with an admonishment that it not be repeated.

[2] At the time Smith applied for benefits, the Plan was known as the Total and Permanent Disability Pension. (Administrative Record at MOE FUND 37, Dkt. No. 18-5.) It was later renamed the All Work Total Disability Pension in subsequent amendments to the Plan. (Defs.' Statement of Additional Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 7, Dkt. No. 25.) While Smith contends that the Total and Permanent Disability Pension and the All Work Total Disability Pension are different disability benefit plans, he points to no evidence to support that contention. Thus, the Court accepts that the Total and Permanent Disability Pension and the All Work Total Disability Pension refer to the same Plan.

> engaging in employment, within or without the geographical area covered by this Pension Plan, in work described in the scope of work provisions contained in the Collective Bargaining Agreements entered in to between the Union and Employers.

(*Id.* ¶¶ 10–11.) Accordingly, Smith was approved to receive a monthly benefit of $1,858.45. (*Id.* ¶ 11.)

As a recipient of disability benefits, Smith was required periodically to submit proof of his continuing disability so that the Fund could confirm that he remained eligible to receive his monthly payments. (Defs.' Statement of Additional Facts in Opp'n to Pl.'s Mot. for Summ. J. ¶ 1, Dkt. No. 25.) Thus, in July 2019, Smith provided the Fund with his most recent medical records, a statement from his physician affirming that he was disabled from all work, and a Social Security Administration statement showing that he had no earnings since 2008. (DSF ¶ 13.) In addition, Smith submitted a letter from the Social Security Administration stating that he had received a Social Security Disability Award beginning in December 2002, but the award ended effective July 2003. (*Id.* ¶¶ 12–13.) Based on this information, the Fund's Level 1 Review Panel determined that Smith was no longer eligible for disability benefits and that his benefits should be terminated as of October 1, 2019. (*Id.* ¶¶ 14–15.)

In a letter notifying Smith of its decision, the Fund informed Smith that he no longer met the criteria for continuing disability benefits because he did not have a Social Security Disability Award. (*Id.* ¶¶ 16–17.) Smith appealed the Fund's decision to terminate his benefits on October 7, 2019. (*Id.* ¶ 19.) The Fund's Review Panel denied Smith's appeal, affirming that Smith was ineligible for disability benefits due to his lack of a Social Security Disability Award. (*Id.* ¶ 20.) Smith then sought a rehearing of the Review Panel's decision. (*Id.* ¶ 21.) In his rehearing appeal letter, Smith explained that his Social Security Disability Award ended when he began working as a security guard in 2003. (*Id.* ¶¶ 22–23.) However, he did not last long at the job because he

3

experienced constant pain while working. (Administrative Record ("A.R.") at MOE Fund 151, Dkt. No. 18-7.)

Prior to the rehearing of Smith's appeal, a Fund manager advised Smith that the Fund had revised the eligibility requirements for Plan participants such that all participants must have a Social Security Disability Award. (DSF ¶ 24.) At the rehearing, Smith argued (through his spouse) that he should not be subject to the requirement of having a Social Security Disability Award. (*Id.* ¶ 26.) Nonetheless, the Review Panel affirmed its denial of his appeal. (*Id.* ¶ 27.) In its decision, the Review Panel explains:

> The participant does not have a Social Security Disability Award and the evidence does not support the conclusion that the participant is totally and permanently prevented from working in any occupation.
>
> In response to a continued proof of disability request, the Fund Office received the participant's most recent medical records, a physician's statement listing that he was disabled from all work, [a Social Security Administration] statement listing that he had no earnings since 2008, and a July 6, 2019 Social Security Disability Award letter which stated that his Social Security Disability Award had started December 2002 and had ceased as of July 2003. The lack of a Social Security Disability Award renders the participant ineligible for the All Work Total Disability Pension.
>
> Effective October 1, 2004, the eligibility requirements for the All Work Total Disability Pension were amended per Section 4.3(b)(ii)(F) of the Pension Plan Document to require a Social Security Disability Award. The participant fails to satisfy this requirement and thus fails to be eligible for the All Work Total Disability Pension.
>
> Moreover, once an application has been made, an All Work Total Disability is defined as "a physical or mental condition of a Participant, which the [Fund] find[s], on the basis of medical evidence, to totally and permanently prevent such Participant from working in any occupation." Because the Social Security Administration revoked the participant's Social Security Disability Award because the participant was working, the [Fund] made a specific factual determination that there is not sufficient medical evidence to find that the participant is totally and permanently prevented from working in any occupation.

4

(*Id.*) After exhausting his administrative remedies (*id.* ¶ 28), Smith brought the present action to challenge the Fund's decision to terminate his disability benefits.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). In evaluating cross-motions for summary judgment, the Court must take "the facts in the light most favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150*, 335 F.3d 643, 648 (7th Cir. 2003). Both the Fund's and Smith's motions for summary judgment focus on whether the Fund's decision to terminate Smith's disability benefits was based on a reasonable interpretation of the Plan.

Under ERISA, 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Where, as here, the operative plan grants the plan administrator discretionary authority to determine eligibility for benefits (*see* DSF ¶ 34), the Court must review the challenged decision under the arbitrary and capricious standard. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). The arbitrary and capricious standard has been described as the "least demanding form of judicial review" and precludes the Court from setting aside "a denial of benefits based on any reasonable interpretation of the plan." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). Put differently, the denial of benefits will be overturned only if

5

the decision is "completely unreasonable." *Id.* Nonetheless, the Court's deference does not require it to be a mere "rubber stamp." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009). "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

The Seventh Circuit "has held that there exists a presumption against the vesting of benefits unless the language in the plan establishes some ambiguity on the issue." *Hackett*, 315 F.3d at 774. And, "[i]f benefits have not vested, the plan participant does not have an unalterable right to those benefits." *Id.* "The fact that benefits have not vested suggests that the plan is malleable and the employer is at liberty to change the plan and thus change the benefits to which a participant is entitled." *Id.* Moreover, "[r]ights to benefits do not accrue prospectively" and a participant does not, "upon initial determination of eligibility, accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due." *Id.* Here, the Fund acknowledges that when Smith applied and was approved for disability benefits, the operative Plan did not require him to have a Social Security Disability Award. Nonetheless, there is no dispute that Smith's disability benefits did not vest. Thus, under Seventh Circuit precedent, the Fund claims that it was free to modify the eligibility requirements for participants and it did so by amending the Plan to require that participants have a Social Security Disability Award.

In evaluating whether the Fund's interpretation of the Plan was arbitrary and capricious, the Court considers the Plan in effect at the time Smith's benefits were denied. *Id.* ("Since the employer can change the plan, then it must follow that the controlling plan will be the plan that is in effect at the time a claim for benefits accrues. We have held that a claim accrues at the time

6

benefits are denied." (citation omitted)). The requirement of a Social Security Disability Award appears in two sections of the controlling Plan. In relevant part, Section 4.3(b)(ii) provides:

> A Participant shall be eligible for an All Work Total Disability Pension upon his Termination of Covered Employment by any reason of an All Work Total Disability and accumulation of at least five (5) Vesting Service Years. A Participant shall be deemed to have terminated Covered Employment by reason of an All Work Total Disability only if:
>
> . . .
>
> (D) He is Totally and Permanently Disabled as defined in Section 4.3(c)(ii);
> . . .
> (F) He has been granted a Social Security Disability Award . . . .

(DSF ¶ 30; A.R. at MOE Fund 54–55, Dkt. No. 18-5.) Then, Section 4.3(c)(ii) states:

> Effective October 1, 2004, in order to apply for an All Work Total Disability Pension, a Participant must have been awarded a Social Security Disability Award. Once an application has been made, an All Work Total Disability is defined as a physical or mental condition of a Participant, which the Trustees find, on the basis of medical evidence, to totally and permanently prevent such participant from working in any occupation.

(DSF ¶ 31; A.R. at MOE Fund 56.)

Reading Section 4.3(b)(ii) and Section 4.3(c)(ii) together, it is plain that both concern a participant's initial eligibility for disability benefits under the Plan. Under Section 4.3(b)(ii), a participant becomes eligible for benefits once he is deemed to have terminated Covered Employment. "Termination of Covered Employment by any reason of an All Work Total Disability" necessarily connotes a discrete event with a definite endpoint—the phrase directs the Fund to consider the circumstances as they existed at the time a participant stopped working. Put differently, it makes no sense to find at the time of the participant's benefits application that there was a termination of covered employment by reason of disability but then determine 18 years later that the termination was not by reason of disability because the participant's condition improved sometime later. Thus, one necessary criteria for a finding of termination of covered employment

7

by reason of disability is a Social Security Disability Award. But it defies common sense to recharacterize the termination retroactively based on the fact that the Social Security Disability Award is subsequently revoked. Section 4.3(c)(ii) reinforces that the Social Security Disability Award is relevant only to the initial eligibility determination, as it makes clear that the award is a precondition for even submitting an application.

If Sections 4.3(b)(ii) and Section 4.3(c)(ii) were the only applicable provisions in the Plan, then perhaps the Fund's requirement of a Social Security Disability Award for continuing receipt of benefits would be contestable and therefore not arbitrary and capricious. But there is another provision in the Plan that is titled and expressly governs the "Duration of Payments." (DSF ¶ 32; A.R. at MOE Fund 56–57.) Specifically, under Section 4.3(d):

> Payment of an All Work Total Disability . . . Pension shall be effective as of the first day of the month next following the date that the Participant files an application for an All Work Total Disability . . . Pension. The last payment of an All Work Total Disability . . . Pension shall be made on the first day of the month preceding the earliest of the following:
>
> . . .
>
> (iii) The month in which the [Fund] determine[s] that cessation of the disability occurred.
>
> *A Participant's disability shall be considered to have ceased*, and the All Work Total Disability . . . Pension *shall be terminated*, if the Participant:
>
> (iv) Returns to employment, within or without the geographical area covered by the Pension Plan in work described in the scope of work provisions contained in the Collective Bargaining Agreements entered into between the Union and the Employers, or
>
> (v) In the opinion of the [Fund] based on medical findings, that the Employee has sufficiently recovered to be able to resume employment as described in (d)(iv) above . . . .

(*Id.* (emphasis added).) Section 4.3(d) plainly sets out how long a participant shall receive benefits once approved and provides criteria for the Fund's determination of when a disability has ceased.

8

Thus, Section 4.3(d) brings into focus the unambiguous distinction the Plan draws between a participant's initial eligibility for benefits and his entitlement to continued receipt of benefits.

Notably absent as a condition to a participant's continued receipt of benefits is any mention of a Social Security Disability Award. That being the case, the Fund was not at liberty to nonetheless impose such a requirement. *See Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004) ("An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits."); *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 541 (7th Cir. 1996) (holding that a plan's fiduciaries acted arbitrary and capriciously when they "deviated from the clear language of the written plan and imposed requirements that were not part of the plan").

Neither before this Court nor in the preceding administrative hearings does the Fund attempt to reconcile its conditioning of Smith's continuing receipt of benefits on an ongoing Social Security Disability Award with the absence of such a requirement in Section 4.3(d). While a plan administrator's decision will not be deemed arbitrary and capricious where it is "based on a reasonable explanation of relevant plan documents," *Estate of Jones v. Children's Hospital & Health System Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018), it was not reasonable for the Fund essentially to ignore that Section 4(d) governed its decision to terminate Smith's benefits. *See Shyman v. UNUM Life Ins. Co. of Am.*, No. 01 C 7366, 2004 WL 609280, at *13 (N.D. Ill. Mar. 25, 2004) ("Ignoring the plain and unambiguous language of an ERISA plan and providing no sufficient explanation for the alternative reading is a sufficient basis for finding arbitrary and capricious conduct."). Interpreting Section 4(d) in the context of the entire Plan, the Court finds no reasonable basis for requiring a participant previously found eligible for disability benefits to have a Social Security Disability Award in order to receive his benefits for a particular month.

The Court concludes that the imposition of such a requirement is unmoored from the Plan's plain language and structure, and therefore it was arbitrary and capricious for the Fund to terminate Smith's disability benefits simply because he lacked a Social Security Disability Award.

As an alternative basis for terminating Smith's benefits, the Fund asserts that the fact that Smith lost his Social Security Disability Award because he was working as a security guard demonstrates that Smith's disability does not preclude him from working in "any occupation" and therefore he no longer has an All Work Total Disability. Specifically, in denying the rehearing of Smith's appeal, the Review Panel explained:

> [O]nce an application has been made, an All Work Total Disability is defined as "a physical or mental condition of a Participant, which the [Fund] find[s], on the basis of medical evidence, to totally and permanently prevent such Participant from working in any occupation." Because the Social Security Administration revoked the participant's Social Security Disability Award because the participant was working, the [Fund] made a specific factual determination that there is not sufficient medical evidence to find that the participant is totally and permanently prevented from working in any occupation.

(DSF ¶ 27.) This argument is based on Section 4.3(c)(ii)'s definition of All Work Total Disability and, if only superficially, has some appeal. Smith's work as a security guard does, of course, qualify as "any occupation" and, at first glance, it would seem that the Fund reasonably determined that his history of post-disability work meant that his All Work Total Disability had ceased. But the Fund was wrong to cite Section 4.3(c)(ii)'s definition as governing the determination of when Smith's disability ceased. Section 4.3(c)(ii) addresses only the participant's initial eligibility for the Plan. On the other hand, Section 4(d), which governs the duration of benefits, expressly sets forth at subsections (iv) and (v) the criteria for determining when the disability has ceased based on the participant's resumption of employment or capability of resuming employment. It is not enough that the participant has been or is capable of performing "any occupation." Rather, the participant must have resumed or be capable of resuming "work

10

described in the scope of work provisions contained in the Collective Bargaining Agreements entered into between the Union and the Employers." (A.R. at MOE Fund 57.)

The criteria for cessation of disability based on return to employment at Section 4(d) is narrower than the broad "any occupation" criteria at Section 4(c)(ii). While the Court does not have information before it to determine the precise meaning of "work described in the scope of work provisions contained in the Collective Bargaining Agreements," that standard necessarily refers to a narrower range of jobs than "any occupation" as set forth at Section 4(c)(ii). Thus, if the definition of All Work Total Disability at Section 4(c)(ii) governed the determination of whether the participant's disability ceased, it would swallow the criteria at subsections (d)(iv) and (v). Accordingly, by finding that Smith's disability had ceased because he met the criteria of Section 4(c)(ii), the Fund interpreted the Plan in a manner that rendered Section 4(d)(iv) and (v) meaningless. That interpretation was therefore arbitrary and capricious. *See Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007) (rejecting a plan administrator's interpretation as lacking "the appeal of common sense" where it denied effect to a particular plan provision, thereby rendering it superfluous); *Clarke ex rel. Est. of Pickard v. Ford Motor Co.*, 343 F. Supp. 2d 714, 720 (E.D. Wis. 2004) (holding that the plan administrator's interpretation was arbitrary and capricious where it rendered language in the plan documents superfluous); *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) ("The interpretation of ERISA plans is governed by federal common law, which draws on general principles of contract interpretation to the extent they are consistent with ERISA. Under these principles . . . . [c]ontract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous . . . ." (citation omitted)).

11

Notably, the Fund excerpts a portion of Section 4(d) in its statement of facts in support of its motion for summary judgment. (DSF ¶ 32.) However, it selectively quotes Section 4(d) so as to omit all that appears below subsection (iii), which states that a participant's monthly benefits will terminate "[t]he month in which the [Fund] determine[s] that cessation of the disability occurred." (*Id.*) If Section 4(d) ended there, then it would certainly be reasonable for the Fund to determine whether Smith's disability had ceased based on the definition at Section 4(c)(ii). But subsection (d)(iii) is immediately followed by the express criteria for determining when a participant's disability is considered to have ceased. (A.R. at MOE Fund 57.) Not only is that highly relevant portion of Section 4(d) ignored in the Fund's briefs, but it is also excised from its presentation of the relevant portions of the Plan in its statement of facts. The Fund's resort to such sleight of hand betrays the indefensibility of its interpretation.

In sum, nothing in the Plan's plain language and structure supports the Fund's imposition of an unenumerated requirement conditioning Smith's continued receipt of monthly disability benefits on his maintenance of a Social Security Disability Award. Moreover, the Fund's decision cannot be justified by a finding that Smith's lack of a Social Security Disability Award was evidence of his ability to work in any occupation. For these reasons, the Fund's termination of Smith's disability benefits was arbitrary and capricious. Accordingly, Smith's motion for summary judgment is granted and the Fund's motion for summary judgment is denied.

Having determined that the Fund's decision terminating Smith's disability benefits was arbitrary and capricious, the Court must next determine the appropriate remedy. "When an ERISA plan administrator's benefits decision has been arbitrary, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits." *Holstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010). Generally, remand is more appropriate than an

award of benefits "unless the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). Here, that Smith did perform some work as a security guard after being approved for an All Work Total Disability Pension raises the possibility that the Fund could articulate an appropriate basis for terminating Smith's benefits. Although it is not enough that Smith's security guard work constitutes "any occupation," it nonetheless might be considered "work described in the scope of work provisions contained in the Collective Bargaining Agreements" and therefore meet the criteria of Section 4(d)(iv). Since the referenced Collective Bargaining Agreements are not in the record, the Court cannot definitely conclude that Smith's past work does not support a determination that his disability ceased pursuant to Section 4(d). Consequently, remand to the Fund's Review Panel is the appropriate remedy. On remand, the Fund must either reinstate Smith's benefits effective October 1, 2019 or explain why Smith's disability has ceased pursuant to Section 4(d).

## CONCLUSION

For the foregoing reasons, Smith's motion for summary judgment (Dkt. No. 22) is granted and the Fund's motion for summary judgment (Dkt. No. 16) is denied. This action is remanded to the Fund's Review Panel for further proceedings consistent with the Court's decision.

ENTERED:

Dated: February 28, 2022

_____
Andrea R. Wood
United States District Judge